IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) <br> ) <br> JEVIC HOLDING CORP., et al., ) <br> ) <br> Debtors. ) | Chapter 11 <br> Bank. No. 08-11006 (BLS) <br> (Jointly Administered) |
| CASIMIR CZYZEWSKI, et al., ) <br> ) <br> Appellants, ) <br> ) <br> v. ) <br> ) <br> JEVIC HOLDING CORP., et al., ) <br> ) <br> Appellees. ) | Civ. Nos. 13-104-SLR and <br> 13-105-SLR (consolidated) |

**MEMORANDUM**

At Wilmington this 24th day of January, 2014 having reviewed the appeal taken by Casimir Czyzewski, Melvin L. Myers, Jeffrey Oehlers, Arthur E. Perigard, and Daniel C. Richards, on behalf of themselves and all others similarly situated, ("appellants"), and the papers submitted in connection therewith; the court issues its decision based on the following analysis:

1. **Background.**[1] Jevic Holding Corp., Jevic Transportation, Inc. and Creek Road Properties, LLC's (collectively, "debtors") are a trucking company. In June 2006,

---

[1]The factual background is largely undisputed and is taken from the United States Bankruptcy Court for the District of Delaware's ("bankruptcy court") oral order dated November 28, 2012 and supplemented by the parties' briefing.

Sun Capital Partners IV, LP, Sun Partners Management IV, LLC and Sun Capital Partners, Inc. (collectively, "Sun") bought debtors, and subsequently refinanced the acquisition through a $101 million loan from The CIT Group/Business Credit, Inc. ("CIT"), as agent for the lenders (the "Lender Group"). (D.I. 19 at 3-4)

2. On May 20, 2008 ("the petition date"),[2] debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United Stated Code (the "Bankruptcy Code") in the bankruptcy court. On June 4, 2008, the United States Trustee appointed the Official Committee of Unsecured Creditors of Jevic Holding Corp. et al. ("the committee") (collectively with debtors, Sun, and CIT, "appellees"). Shortly prior to the petition date, the debtors wound-down their business, ceasing substantially all of their operations and terminating approximately 90% of their employees. After the petition date, all of the debtors' tangible assets were liquidated and the proceeds used to partially repay the outstanding obligations owed to CIT.

3. On May 21, 2008, appellants,[3] who are truck drivers[4] whose employment was terminated by debtors, filed a complaint asserting claims under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et. seq., and the New Jersey Millville Dallas Airmotive Plant Job Loss Notification Act, PL. 2007, c.212, C.34:21-2.[5] (D.I. 19

---

[2]As of the petition date, the debtors' primary secured creditors were Sun and CIT, with an aggregate of approximately $53 million on a first priority senior secured basis. (08-11006-BLS, D.I. 1519 at 5:1-4)

[3]Referred to by the bankruptcy court as "the Warren [sic] plaintiffs."

[4]About 1,200 truck drivers who claim over $20 million and are debtors' largest group of unsecured creditors. (D.I. 19 at 1)

[5]Appellants allege that these claims are priority claims under 11 U.S.C. §§ 507(a)(4) and (a)(5); as such, they allege they should be paid in full before any funds may be paid to general or lower priority creditors. (D.I. 19 at 4)

at 4)

4. Appellees reached a settlement agreement ("settlement"), dated June 22, 2012, which resolved all claims among the debtors and their estates, the committee, CIT, the Lender Group and Sun. Appellants minimally participated in the settlement negotiations, but did not agree to the settlement. (08-11006-BLS, D.I. 1519 at 11; D.I. 1514 at 31:13-21, 68:11-22) The settlement "provided for (a) the exchange of releases, (b) the payment of $2 million by CIT to the [d]ebtors, to be used to satisfy unpaid chapter 11 administrative claims, (c) the dismissal with prejudice of the Adversary Proceeding,[6] (d) the assignment by Sun of its lien on the estates' remaining assets to the Jevic Holding Corp. Liquidating Trust (the "[c]reditors['] [t]rust") for the benefit of the [d]ebtors' unsecured creditors and certain priority tax claimants, (e) the reconciliation of administrative and unsecured claims, and (f) the dismissal of the chapter 11 cases." (D.I. 15 at 5; ex. A at ¶ 3)

5. Appellants objected to the agreement on various grounds.[7] After briefing and an evidentiary hearing, the bankruptcy court concluded that the possibility of recovery for appellants was remote at best, as there were "several independent hurdles that the [c]ommittee would have to clear before it would actually see a material recovery out of the litigation," which would take years (08-11006-BLS, D.I. 1519 at 13:7-9) Further, the debtors possessed no funds that were not subject to the liens of CIT and Sun, to continue with litigation. The bankruptcy court entered the settlement on December 4,

---

[6]A proceeding brought by the committee against CIT and Sun, respectively the debtors' senior and junior secured lenders.

[7]The United States Trustee also objected.

2012. (08-11006-BLS, D.I. 1520)

6. On January 2, 2013, appellants filed a motion to stay with the bankruptcy court. (08-11006-BLS, D.I. 1545) After briefing and argument, the bankruptcy court denied the stay on January 18, 2013 but, as a courtesy to the district court, instructed the debtors to refrain from consummating the settlement for ten to fifteen days to give appellants an opportunity to challenge the ruling. (D.I. 16, ex. 6 at 29-30; 08-11006-BLS, D.I. 1567) Appellants did not challenge the denial and have not further sought a stay.

7. At a hearing on February 20, 2013, appellants sought clarification regarding whether the appellees could move forward with implementing the settlement. The bankruptcy court confirmed the lack of a stay. The committee advised that appellees were "actively considering closing. So if [appellants] want to stay . . . they should file a motion promptly." Although appellants indicated that they would be seeking a stay (D.I. 16, ex. 3 at 12-14), no such motion was filed in this court.

8. The appellees instigated a series of transactions to implement the settlement, beginning on August 28, 2013. All funds were distributed under the settlement, with the creditors' trust distributing 1,039 final disbursement checks to holders of allowed general unsecured claims and 29 final disbursement checks to holders of allowed unsecured priority tax claims.[8] (D.I. 15 at 9) The bankruptcy court dismissed the debtors' chapter 11 cases on October 11, 2013.

9. **Standard of Review.** This court has jurisdiction to hear an appeal from the

---

[8]Of these, 39 checks were returned and "$90,422.58 in checks have not been negotiated by the payees . . . ." (D.I. 16 at 9)

bankruptcy court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). With mixed questions of law and fact, the court must accept the bankruptcy court's "finding of historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir. 1981)). The district court's appellate responsibilities are further informed by the directive of the United States Court of Appeals for the Third Circuit, which effectively reviews on a de novo basis bankruptcy court opinions. *In re Hechinger*, 298 F.3d 219, 224 (3d Cir. 2002); *In re Telegroup*, 281 F.3d 133, 136 (3d Cir. 2002).

10. **Analysis.** Appellants largely do not contest the bankruptcy court's factual findings. Instead, appellants fault the bankruptcy court's approval of the settlement on various legal grounds. Contrary to appellants' contentions, the bankruptcy court properly evaluated the proposed settlement, considering the *Martin* test's four criteria[9] and determining that the settlement was "fair and equitable." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *Protective Comm. for Indep. Stockholders of*

---

[9]"(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."

4

*TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). More specifically, the bankruptcy court considered appellants' primary objections to the settlement - that the proceeds did not flow to their claims and that the committee breached its fiduciary duty - in making its determination. (D.I. 1519 at 9:4-10); *see In re Nutraquest, Inc.*, 434 F.3d 639, 644-45 (3d Cir. 2006) (finding that "many cases have applied the *Drexel- TMT Trailer-Martin* factors to settlements involving claims against debtors" and the court should "carefully examine" the settlement and determine if it was fair to "the parties who did not settle") (citations omitted). As discussed below, these objections did not necessitate rejecting the settlement.

11. As to the pending WARN litigation, the bankruptcy court found that the litigation was in the early stages, would be lengthy and expensive, was not "a slam dunk," and the estate was without funds to support any litigation. (D.I. 1519 at 12-14) As to the "paramount interest of creditors" factor, the settlement involves "a substantial distribution to unsecured and certain administrative creditors." (D.I. 1519 at 14:4-17) Further, appellants' claim against the estate is "effectively worthless given that the estate lacks available unencumbered funds to satisfy it if it were allowed." (*Id.*)

12. As to the whether the settlement is "fair and equitable," the bankruptcy court found that all of the major economic stakeholders were involved in the negotiations (including appellants),[10] the committee lacked the resources to continue any litigation,

---

[10]The appellants initially participated in the negotiations, but chose not to settle as they wished to continue their pending litigation against debtors and Sun. (D.I. 1519 at 11-12) Appellants argue that the bankruptcy court erred in concluding that they "opted out" of the settlement, however, considering appellants were included in the negotiations, the court does not find this factual conclusion clearly erroneous.

5

and the settlement offered "the prospect of a meaningful distribution to unsecured creditors, and to some but admittedly not all administrative priority creditors." (D.I. 1519 at 9-10)

13. Appellants contend that the committee breached its fiduciary duty when it agreed to the settlement structure. The court concludes otherwise. The committee fulfilled its charge to investigate and prosecute potential causes of action. (D.I. 1519 at 11:16-25) The committee fully participated in the negotiations and then sought approval of the settlement with the support of the debtor. (*Id.*) The court finds that the settlement was in the best interest of the estate and of resolving the pending Chapter 11 cases.

14. As discussed by the bankruptcy court, the settlement does not follow the absolute priority rule. However, this is not a bar to the approval of the settlement as it is not a reorganization plan.[11] *Cf. In re Armstrong World Indus., Inc.*, 432 F.3d 507, 509 (3d Cir. 2005) (affirming the district court's denial of confirmation of a reorganization plan which violated the absolute priority rule). In *Armstrong*, the Third Circuit distinguished a line of cases approving settlement agreements allowing "creditors . . . to distribute their proceeds from the bankruptcy estate to other claimants without offending section 1129(b)." *Id.* at 514 (discussing *In re SPM Mfg. Corp.*, 984 F.2d 1305 (1st Cir. 1993); *In re Mcorp Fin., Inc.*, 160 B.R. 941 (S.D. Tex. 1993), and *In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001)); *see also In re World Health Alts.,*

---

[11]The bankruptcy court found that there was no prospect of a confirmable plan. (D.I. 1519 at 8:6-8) This court has no reason to question this conclusion on the record at bar, nor have the appellants presented any evidence to the contrary.

*Inc.*, 344 B.R. 291, 297-98 (Bankr. D. Del. 2006); *In re Kainos Partners Holding Company, LLC*, 2012 WL 6028927 at *12 (D. Del. Nov. 30, 2012) (finding that the settlement did "not violate the Bankruptcy Code's statutory priority scheme but, instead, satisfie[d] the criteria for approval under Bankruptcy Rule 9019 and the standards set forth under *In re Martin*). In the case at bar, "the funds are indisputably the collateral of the secured creditors, [and] admittedly subject to litigat[ion] challenge." Therefore, the court concludes that the bankruptcy court did not err in confirming the settlement and dismissing the Chapter 11 cases. (D.I. 1519 at 10-11)

15. Alternatively, appellees have moved to dismiss this appeal as equitably moot. (D.I. 14) In determining whether the doctrine applies, courts should consider the following "two analytical steps: (1) whether a confirmed plan has been substantially consummated; and (2) if so, whether granting the relief requested in the appeal will (a) fatally scramble the plan and/or (b) significantly harm third parties who have justifiably relied on plan confirmation." *In re Semcrude, L.P., et al.*, 728 F.3d 314, 321 (3d Cir. Aug. 27, 2013).

16. The court finds that the settlement has been substantially consummated as all the funds have been distributed. Should the court grant the appeal, the settlement will be irreversibly "scrambled," as it did not provide for funds for appellants' speculative recovery and appellants chose not to substantively participate in the negotiation and subsequent settlement. The parties to the settlement reached their negotiated resolution following years of litigation and will be harmed if the settlement is now unwound. The court concludes that the appeal is equitably moot in view of the settlement.

17. For the reasons discussed above, the court dismisses the appeal and affirms the order of the bankruptcy court. An order shall issue.

                                               _____
                                               United States District Judge